O

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

RUTH DUARTE, an individual,

               Plaintiff,

      v.

AETNA LIFE INSURANCE
COMPANY and DOES 1-10, inclusive,

              Defendants.

CASE NO.: SACV 13-00492-JLS (RNBx)

**FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW**

## I.    INTRODUCTION

      This is an action brought pursuant to the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by plaintiff Ruth Duarte
against defendant Aetna Life Insurance Company ( "Aetna").  Plaintiff alleges that
Aetna violated ERISA by terminating her short-term disability ("STD") benefits
and denying her claim for long-term disability ("LTD") benefits.  Aetna is the
claims administrator for the Boeing Company's  STD and LTD Plans.  Boeing's

STD Plan is self-funded and not insured while its LTD Plan is insured by Aetna. Both Plans are employee welfare benefit plans governed by ERISA.

The parties have submitted the Administrative Record ("AR") and proposed findings of fact and conclusions of law for review.  The parties agreed to submit the case to the Court for findings of fact and conclusions of law based on the pleadings, papers, and Administrative Record.  For the following reasons, Aetna's decision terminating Plaintiff's STD benefits is REVERSED and its decision denying her LTD benefits is REMANDED for further review.

## II.    FINDINGS OF FACT

The following constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.[1]

### A.    Plan Provisions

1.    The Summary Plan Description ("SPD") provides information to employees about their STD and LTD benefits.   *See* AR at 1189-1284.[2]

2.    The SPD defines STD as follows:

> You become disabled as a result of accidental injury, illness, or a pregnancy-related condition and your accidental injury, illness, or pregnancy-related condition prevents you from performing the material duties of

---

1   To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact.  To the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

2    All citations are excerpts from the Administrative Record ("AR"), filed by Defendant on February 5, 2014.  (Docs. 18-23.)

your *own occupation* or other appropriate work the Company makes available.

- You continue under the care of a physician throughout your disability.  You also may be required to be examined by a physician chosen by the service representative as often as reasonably necessary to verify your disability.

- You are earning 80 percent or less of your indexed predisability earnings.

    All determinations of disability are made by the service representative within the terms of its contract with the Company.

*Id.* at 1279 (emphasis added).

3.    The STD Plan "is funded solely by Company contributions (self-funded)."  *Id.* at 1274.  Aetna does not fund the payment of STD benefits.

4.    The STD Plan is not insured and not governed by any insurance policy written by Aetna or any other insurer.  *See id.*

5.    The Plan defines LTD as follows:

From the date that you first become disabled and until Monthly Benefits are payable for 30 months, you will be deemed to be disabled on any day if:

- you are not able to perform the **material duties** of your **own occupation** solely because of: disease or injury; and
- your work earnings are 80% or less of your **adjusted predisability earnings**.

After the first 30 months that any Monthly Benefit is payable during a period of disability, you will be deemed

3

to be disabled on any day if you are not able to work at any **reasonable occupation** (**this is any gainful activity for which you are, or may reasonably become fitted by education training or experience.   It does not include work under an approved rehabilitation program**) solely because of:

- disease; or
- **injury**.

If your **own occupation** requires a professional or occupational license or certification of any kind, you will not be deemed to be disabled solely because of the loss of that license or certification.

*Id.* at 66 (emphasis in original).

6.      The Policy defines "Own Occupation" as "the occupation that you are routinely performing when your period of disability begins."  *Id.* at 75.

7.      The LTD Plan defines "Material Duties" as duties that:

- are normally required for the performance of your **own occupation**; and
- cannot be reasonably: omitted or modified.

*Id.* (emphasis in original).

8.      The Policy provides that a claimant's disability ends on "[t]he date Aetna finds you are no longer disabled or the date you fail to furnish proof that you are disabled."  *Id.* at 67.

9.      The LTD Plan contains an "Elimination Period," which is a waiting period wherein LTD benefits are not paid for the first twenty six weeks of a period of disability.  *See id.* at 60.

4

**B.     Duarte's STD Benefits Claim**

10.     Duarte is a 53 year old female who worked for the Boeing Company ("Boeing") since 1986, most recently as a Senior Finance Manager.  *See* AR 160.

11.     Duarte's position at Boeing involved sedentary work.

12.     Duarte last worked on June 1, 2012.  *See id.* at 168.

13.     In June of 2012, Duarte submitted a claim for STD benefits based upon complications following a hysterectomy she underwent on June 4, 2012.  *See id.* at 227-230.

14.     On June 6, 2012, Dr. Lisa Worsch, the surgeon who performed the hysterectomy, completed a Return to Work/Functional Capacities form which stated that as a result of post-operative complications, Duarte could not return to work for six weeks.  *See id.* at 332.

15.     On June 6, 2012, Aetna found that the objective medical findings supported a finding of Plaintiff's disability.  *See id.* at 226, 327, 349-353.

16.     Aetna determined that Plaintiff was disabled under the "own occupation" standard contained in the STD Plan.  *See supra* ¶ 12.

17.     On July 24, 2012, Aetna agreed to pay benefits from June 11, 2012 through August 2, 2012, the predicted length of Plaintiff's disability.  *See id.* at 841-843.

18.     This determination date did not take into account Plaintiff's musculoskeletal problems.  *See id.* at 320-321, 977-979.

19.     On July 26, 2012, Aetna advised Duarte that her Medical Certification would expire on August 2, 2012, and that her health care provider would need to complete an updated certification in order to extend her benefits.  *See id.* at 355-362.

20.     Aetna received an Attending Physician's Statement ("APS") completed by Dr. Worsch on August 3, 2012.  Dr. Worsch stated that Duarte had improved and that she no longer needed to be absent from work because her hysterectomy-related disability ended on August 3, 2012.  *See id.* at 363-365.

21.     On August 7, 2012, Aetna also received an APS completed by Michael Kurtz, D.O., Family Practice.  This APS stated that Duarte needed to be absent from work from August 3, 2012 until September 13, 2012, due to anxiety neurosis for which she was receiving treatment from a therapist (Wayne Lenz, Marriage and Family Therapist ("MFT")).  *See id.* at 366-370.

22.     In concluding that Plaintiff had "no ability to work," Dr. Kurtz listed the following symptoms: "under a lot of stress, feels anxious, unable to concentrate, feels overwhelmed, fatigue, insomnia, panic attacks, anxiety."  *Id.*

23.     Aetna found that Dr. Kurtz's August 7, 2012 APS did not support a finding of continued disability because it did not include any specific exam findings, nor did it list any specific impairments that precluded work.  *See id.* at 234.

24.     On August 16, 2012, Aetna requested that Duarte provide contact information for MFT Lenz so that it could obtain medical records in order to review her eligibility for benefits beyond August 2, 2012.  *See id.* at 374.

25.     On August 29, 2012, Aetna notified Duarte that it requested, but had not received, medical records from MFT Lenz.  *See id.* at 376.

26.     Aetna told Duarte that it needed to receive MFT Lenz's records no later than September 12, 2012.  *See id.*

27.     On September 13, 2012, Aetna informed Duarte that it was denying her claim for STD benefits beyond August 2, 2012.  *See id.* at 814.

6

28.    On September 19, 2012, Aetna received and reviewed therapy session notes completed by MFT Lenz.  *See id.* at 397-404.

29.    MFT Lenz described Duarte as having "adjustment issues following a hysterectomy surgery." *Id.* at 399.

30.    MFT Lenz diagnosed Duarte as having symptoms of depression, anxiety and marital stress.  *See id.* at 404.

31.    On September 21, 2012, Aetna again informed Duarte that it was denying her claim for STD benefits beyond August 2, 2012.  *See id.* at 405.

32.    Aetna explained that its decision was based on its evaluation of Duarte's subjective and objective medical information.  *See id.*

33.    Aetna informed Duarte that the information it received failed to document any specific impairments of a severity that would preclude her from working. *See id.*

34.    Aetna further explained that "[b]ased on the information reeviewed regarding your diagnosis, we find that the documentation does not support disability as defined in your group policy." *Id.*

35.    Aetna also advised Duarte that her claim for LTD benefits had been denied in accordance with Plan guidelines which provide that a claimant must meet the twenty-six week elimination period in order to be eligible for LTD benefits. *See id.*

36.    In its September 21, 2012 letter, Aetna invited Duarte to submit additional information that would help Aetna evaluate her disability status.   Aetna specifically requested clinical findings and test results that would support a finding that Duarte's condition was sufficiently severe so as to impair her from performing her own occupation.  Aetna  provided specific examples of information that might

7

be helpful, including:

- A detailed description [of] your functional impairments and restrictions, with evidence to support those limitations[;]
- A detailed explanation of how the severity of your condition is documented, other than by subjective complaints;
- Any documents or information specific to the condition(s) for which you are claiming total disability, and which would assist in the evaluation of your disability status;
- Any other information or documentation you believe may assist us in reviewing your claim.

*Id.*

### C.    Medical Evidence of Plaintiff's Orthopedic Condition

37.    Plaintiff suffered a fall in 2000, and has had back problems ever since. *See id.* at 516-519.

38.    On January 17, 2010, Plaintiff underwent an MRI of her shoulder, which showed "tendinosis of the supraspinatus tendon" and "[m]ild degenerative disease of the acromioclavicular joint." *Id.* at 594.

39.    On December 8, 2010, Plaintiff underwent another MRI which showed a compromised nerve at C6-C7. *See id.* at 938-947.

40.    On December 8, 2011, approximately one year later, Plaintiff underwent an MRI which showed degenerative changes in the lumbar spine at L5-S1. *See id.* at 949-950.

41.    Dr. Raafat Mattar completed a Progress Note dated December 8, 2011, which indicated that Plaintiff was suffering from pain in her thoracic spine. *See id.* at 989-991.

42.     Plaintiff continued to see Dr. Mattar, who completed another Progress Note on March 29, 2012, which indicated that Plaintiff was suffering from pain in her thoracic spine and cervicalgia. *See id.* at 516-519.

43.     On April 30, 2012, Dr. Mattar completed an Operative Report regarding the cervical epidural steroid infusion procedure he performed on Plaintiff. *See id.* at 983-984.

44.     On May 14, 2012, Dr. Mattar wrote that Plaintiff continued to suffer from pain in her thoracic spine and cervicalgia. *See id.* at 980-982.

45.     On May 29, 2012, Dr. Mattar wrote that Plaintiff was still suffering from pain in her thoracic spine, cervicalgia, and cervical disc displacement.  *See id.* at 977-979.

46.     On August 23, 2012, Dr. Kurtz noted that Plaintiff was suffering from myalgia, myositis, cervical spondylosis with myelopathy, radiculopathy, and depression with anxiety." *Id.* at 1007-1008.

47.     On September 20, 2012, Dr. Kurtz again noted the following conditions: myalgia, myositis, cervical spondylosis with myelopathy, lumbar disc disorder with myelopathy, and depression with anxiety.  *See id.* at 416-418

48.     On September 21, 2012, Aetna reported the following in an entry in its Chronological Claim Notes:  "EE [employee] is noted by Mid-August to have reports [sic] almost all symptoms have decreased or subsided.  It is not clear why she would need to remain oow [out of work] thru the requested Nov date in her LOA [leave of absence]." *Id.* at 241.

49.     On September 26, 2012, Plaintiff underwent another MRI that showed disc desiccation and bilateral facet arthropathy at L4-L5, disc desiccation and disc bulge at L5-S1, direct compression on the descending right S2 nerve root, and

rudimentary disc space at S1-S2.  *See id.* at 599.

50.     That same MRI also revealed that Plaintiff had no significant disc bulges or protrusions at T11-T12, T12-L1, L1-L2, L2-L3, L3-L4 and L4-L5.  There was also no neural foraminal narrowing, central spinal canal stenosis or facet arthropathy at these areas except for facet arthropathy at L4-L5.  *See id.* at 598.

51.     On September 27, 2012, a Progress Note from Dr. Mattar indicated that Plaintiff reported a sharp, aching pain in her neck and upper back.  The severity of the pain was three out of ten, on average.  *See id.* at 621.

52.     On October 9, 2012, Aetna wrote Plaintiff and informed her that despite receiving medical records from Dr. Kurtz, its decision terminating benefits remained unaltered.  *See id.* at 425.

53.     On October 10, 2012, Aetna received thirty-six pages of medical reports from Dr. Kurtz.  *See id.* at 428-464, 646-680.

54.     Those records included an APS from Dr. Kurtz, dated September 25, 2012, stating that Plaintiff was unable to work from August 3, 2012 to November 7, 2012.  *See id.* at 646-647.

55.     Those records also included an October 8, 2012 report by Dr. Kurtz which indicated that Plaintiff was suffering from "intervertebral disc disorder of lumbar region with myelopathy" and sciatica.  *Id.* at 650.

56.     On October 11, 2012, Dr. Mattar wrote that Plaintiff was suffering from pain in her thoracic spine, cervicalgia, and cervical disc displacement.  *See id.* at 529-531.

57.     On October 12, 2012, Dr. Kurtz wrote that Plaintiff was suffering from back pain and a decreased range of motion of her cervical spine.  *See id.* at 603-604.

58.     On October 16, 2012, Aetna informed Plaintiff that despite receiving and reviewing recent records from Dr. Kurtz, its decision terminating benefits remained unchanged.  *See id.* at 465.

59.     On October 17, 2012, Dr. Kurtz diagnosed Plaintiff with cervical spondylosis with myelopathy, radiculopathy, orbital cellulitis and trigeminal neuralgia.  *See id.* at 506.

60.     An APS dated October 23, 2012, from Dr. Kurtz extended the end of Plaintiff's period of disability from November 7, 2012 to February 13, 2013.  *See id.* at 1083.

61.     Another APS from Dr. Kurtz, dated October 26, 2012, again noted the period of disability as August 3, 2012 to February 13, 2013.  In the "Limitations/Restrictions" section of the APS, Dr. Kurtz wrote "no lifting, pushing, pulling."  *Id.* at 492.

### D.      Plaintiff Appeals Aetna's Decision

62.     On October 24, 2012, Duarte faxed Aetna a document entitled "Appeal for Ruth Duarte" and thereby appealed Aetna's decision to terminate STD benefits.  *See id.* at 466.

63.     On October 25, 2012, Aetna notified Duarte that it received her appeal, had begun its appeal review, and anticipated issuing a decision by December 8, 2012.  *See id.* at 472.

64.     On November 7, 2012, Duarte requested and received an extension of time to submit additional medical documentation for her appeal review.  Aetna informed Duarte that unless she requested a further extension, all additional medical records had to be submitted by December 6, 2012.  *See id.* at 494.

11

65.     On November 19, 2012, Boeing started advertising for Plaintiff's replacement.  *See id.* at 890.

66.     In a letter addressed "To Whom it May Concern" dated November 20, 2012, Dr. Kurtz wrote that Plaintiff was diagnosed with "cervical spondylosis with myelopathy, radiculopathy, trigeminal neuralgia, sprain of the thoracic spine and vertiginous syndrome."  *See id.* at 702-703.

67.     Dr. Kurtz confirmed that Plaintiff's MRIs showed problems at C6-C7, C5-C6, T1-T2, and T2-T3.  He wrote:

> Mrs. Duarte continues to have ongoing neck pain, numbness in her hands and fingers and headaches.  She has been consistently complaining of cervical pain, headaches, pain radiating down arm, lumbar pain with myelopathy.  She is unable to sit and type for any length of time without neck pain.  She has motor weakness of her right upper extremity and is unable to concentrate from the constant pain.

*Id.* at 702.

68.     On November 26, 2012, Aetna received additional medical records from Plaintiff.  *See id.* at 565.

69.     On November 29, 2012, Aetna advised Duarte of its decision denying her claim for LTD benefits because: (1) her STD claim was not extended past August 2, 2012; and (2) she had not satisfied the 26-week waiting period for LTD benefits.  Specifically, Aetna stated:

> According to our records, your first date of disability was 06/04/2012.  Therefore, your 26-week qualifying period would have ended 12/02/2012.  As we have not received evidence of your continued disability beyond 08/02/2012, you have not satisfied the 26 week wait period for LTD benefits and your LTD claim has been denied.

*Id.* at 698.

70.     On November 30, 2012, Duarte's attorney advised Aetna in writing that Duarte "hereby appeals the adverse benefits decision made by Aetna" and seeks payment of both STD and LTD benefits.  *Id.* at 700.

71.     Duarte's attorney enclosed 372 pages of additional documentation relating to her claim.  *See id.* at 700-701.

72.     In a letter dated December 20, 2012, Duarte's attorney clarified that the November 30, 2012 letter appealed the denial of both her STD and LTD claims.  *See id.* at 1077-1079.

73.     On January 3, 2013, Aetna notified Duarte that it needed a forty-five day extension of time, until February 21, 2013, to complete her appeal review. Aetna explained that it had referred Duarte's file to an Independent Physician Reviewer for a full medical review, which had not yet been completed.  Thus, Aetna had not yet made a final decision with respect to Duarte's appeal.  *See id.* at 1090.

74.     On January 11, 2013, Dr. Katherine Duvall, a specialist in Occupational Medicine, completed a peer review of Duarte's file without personally examining her.  *See id.* at 1117-1122.

75.     In formulating her analysis, Dr. Duvall reviewed Duarte's medical records and conducted a peer-to-peer conference with Duarte's treating physician, Dr. Kurtz, on January 2, 2013.  *See id.* at 1121.

76.     Dr. Duvall stated as follows:

> In my opinion, the claimant does have functional impairments for the review period due to pain and potentially sedating side effects of Nucynta.  Although the degree of pain perceived can be subjective, her complaints of pain are supported by the MRI findings, and physical exam noting spasm and decreased range of

motion. *Id.*

77.     Due to the above finding, Dr. Duvall opined that Duarte's lumbar and cervical conditions restricted her from lifting over twenty pounds overhead and from repetitive work with her right arm.  *See id.* at 1121-1122.

78.     Despite these restrictions, Dr. Duvall concluded that Duarte would have been able to work at a sedentary to light level for the review period August 3, 2012 through December 31, 2012.  *See id.* at 1122.

79.     On January 18, 2013, Aetna sent a letter to Duarte which begins by explaining that her STD benefits were terminated because "[t]he medical information in your file was reviewed and determined to not support impairment that would have prevented you from performing the essential functions of your own occupation . . . as of August 3, 2012, and beyond."  *Id.* at 1091.

80.     The letter then states:

> Based upon our review of all of the information submitted and gathered during the claim and appeal, we have overturned our original decision to terminate your [STD] benefits.  As a result, your claim has been returned to the claims operation team and will be re-opened by your Disability Benefits Manager (DBM) *for review and benefit payment*, *effective August 3, 2012, through the maximum STD duration of December 2, 2012*.  Any benefits owed will be processed separately.

*Id.* (emphasis added).

81.     Aetna further informed Duarte that "[a] Long Term Disability (LTD) benefits review will be completed to determine *continued* disability benefits beyond the maximum STD duration of December 2, 2012."  *Id.* (emphasis added).

82.     In a letter dated February 13, 2013, Aetna advised Duarte's attorney that it had reviewed her appeal and determined to uphold its decision denying STD benefits, stating:

> Based on the provided documentation contained in your client's file, we have determined the information did not support her continued disability as of August 3, 2012, and beyond.   Therefore, we are upholding the decision to terminate your client's STD benefits effective August 3, 2012.   In addition, you client's claim for Long Term Disability benefits has been denied as she has not met the 26-week waiting period.

*Id.* at 1132.

### E.     Aetna's Reconsideration of Duarte's Appeal

83.     On March 25, 2013, Duarte's attorney provided Aetna with two more medical reports in an attempt to convince Aetna to reconsider its denial of her appeal.  *See id.* at 1142.

84.     The first such report is a letter from Dr. Kurtz dated March 18, 2013, which states:

> Mrs. Duarte's diagnoses are cervical, thoracic, and lumbar disc herniation with radiculopathy, shoulder impingement with osteoarthritis, fibromyalgia, depression with anxiety, and extreme fatigue and trigeminal neuralgia.

> She appears depressed, fatigued, weak and pale on physical examination.

> Due to the above objective findings, it is in my medical opinion that Mrs. Duarte is unable to find gainful employment at this time or in the foreseeable future.

*Id.* at 1144-1145.

15

85.     The second report is an undated letter from Stefanie Bennett, L.Ac., Ph.D., acupuncturist, which states that Duarte "is unable to concentrate and focus due to severe pain making work impossible." *Id.* at 1146.

86.     On April 5, 2013, Aetna notified Duarte's attorney that it was reconsidering her appeal and would notify him of its decision by May 9, 2013. *See id.* at 1147-1152.

87.     On May 2, 2013, Dr. Elena Antonelli, a specialist in Occupational Medicine, completed another peer review without examination. *See id.* at 1158-1167, 1175-1184.

88.     In formulating her analysis, Dr. Antonelli reviewed Duarte's medical records, conducted a peer-to-peer conference with Duarte's acupuncturist, and attempted, albeit unsuccessfully, to confer with Dr. Kurtz. *See id.* at 1176, 1182.

89.     Dr. Antonelli concluded that for the time period from August 3, 2012 through April 30, 2013, Plaintiff was not restricted from engaging in her own sedentary occupation for Boeing. *See id.* at 1183.

90.     In reaching her conclusion, Dr. Antonelli stated:

> From 08/03/2012 through 04/30/2013 the documentation does not objectively support the request for ongoing limitations in the claimant's activities and it appears that her activity restrictions have been primarily based on subjective complaints. Multiple physical examinations during this period of time have not documented clear deficits in her joints or spine, although she has ongoing complaints.

*Id.*

91.     Dr. Antonelli also noted that although Duarte had some findings on her MRI imaging studies, her physical examinations did not support ongoing impairment. *See id.*

92.    On May 6, 2013, Aetna notified Duarte's attorney that it would need an extension of time until June 23, 2013, to provide its final decision. *See id.* at 1168.

93.    On May 14, 2013, Aetna notified Duarte, through a letter to her attorney, that it had completed its additional appeal review and reached a final decision to uphold its original termination of Duarte's STD benefits. *See id.* at 1187-88.

94.    Aetna further informed Duarte of its determination that the information she provided did not support her continued disability past August 3, 2012, and that it denied her claim for LTD benefits for failure to meet the 26-week waiting period. *See id.* at 1188.

95.    Aetna further explained that because Duarte had already received two appeal reviews, this decision was final and not subject to further review. *See id.*

## III.    CONCLUSIONS OF LAW

### A.    Standard of Review

The beneficiary of an ERISA plan may bring a civil action against a plan administrator "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, and to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  As such, Plaintiff has standing as a plan beneficiary to bring this action against the plan administrator, Aetna, to recover benefits under the Plan.  The scope of judicial review of an ERISA benefits decision depends on whether the plan confers discretion to the plan administrator in determining benefits. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).  The Court reviews a denial of benefits *de novo*, unless "the benefit plan gives the administrator or fiduciary

1    discretionary authority to determine eligibility for benefits or to construe the terms

2    of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)

3    (holding that "a denial of benefits challenged under §1132(a)(1)(B) is to be

4    reviewed under a *de novo* standard unless the benefit plan gives the administrator

5    or fiduciary discretionary authority to determine eligibility for benefits or to

6    construe the terms of the plan").

7        "[T]he presumption of *de novo* review can be overcome only when a plan's

8    reservation of discretion is unambiguous." *McDaniel v. Chevron Corp.*, 203 F.3d

9    1099, 1107 (9th Cir. 2000).  Discretionary authority is unambiguously granted

10   where a plan administrator has both the responsibility to interpret the terms of a

11   plan and determine eligibility for benefits.  *See Abatie v. Alta Health & Life Ins.*

12   *Co.*, 458 F.3d 955, 965 (9th Cir. 2006) ("By giving the plan administrator 'full and

13   final' authority, and vesting such authority 'exclusively' in the administrator, this

14   policy clearly gave to the plan administrator the power to decide according to its

15   own judgment.  Under *Firestone*, . . . this provision is sufficient to vest discretion

16   in the plan administrator.  Accordingly, under *Firestone*, *de novo* review does not

17   apply; abuse of discretion review does.").  Thus, "[w]here an ERISA plan vests the

18   administrator with discretionary authority to determine benefit eligibility, 'a

19   district court may review the administrator's determinations only for an abuse of

20   discretion.'"  *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 552 (9th Cir. 1995)

21   (quoting *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1993)

22   (citing *Firestone*, 489 U.S. at 115)).

23       The Ninth Circuit has held that an "ERISA administrator abuses its

24   discretion only if it (1) renders a decision without explanation, (2) construes

25   provisions of the plan in a way that conflicts with the plain language of the plan, or

26

27

28

                                            18

(3) relies on clearly erroneous findings of fact." *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005).   "Under this deferential standard, a plan administrator's decision 'will not be disturbed if reasonable.'"   *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506, 521 (2010) (internal quotation marks omitted)).   "This reasonableness standard requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record."   *Id.* (quotation marks and citation omitted).

### B.   Aetna Found Plaintiff to be Disabled Through December 2, 2012

1.      Because the Plan documents unambiguously vest discretion with Aetna in determining benefits, the standard of review is abuse of discretion.

2.      Although Aetna argues to the contrary, the plain language of the letter dated January 18, 2013, represents a finding by Aetna that Plaintiff remained disabled from August 3, 2012 through at least December 2, 2012, the end of the STD benefits period.   Aetna specifically stated it was "overturn[ing]" its prior decision and that Plaintiff would receive "benefit payment, effective August 3, 2012, through the maximum STD duration of December 2, 2012."

3.      Having found in Plaintiff's favor regarding the extension of her disability period, Aetna's February 13, 2013 letter, which ignores the existence and contents of its January 18, 2013 approval of extended STD benefits, was arbitrary and capricious.

4.       In light of the January 18, 2013 letter, Aetna was obligated to pay Plaintiff STD benefits from August 3, 2012 through December 2, 2012.   *See Pannebecker v. Liberty Life Assurance  Co. of Boston*, 542 F.3d 1213, 1221 (9th Cir. 2008) ("[W]hether the administrator abused its discretion because the decision

was substantively arbitrary or capricious, or because it failed to comply with required procedures, benefits may still be reinstated if the claimant would have continued receiving benefits absent the administrator's arbitrary and capricious conduct."); *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001) (stating that "retroactive reinstatement of benefits is appropriate in ERISA cases where, as here, but for the insurer's arbitrary and capricious conduct, the insured would have continued to receive the benefits").

5.     The appropriate remedy is to reverse Aetna's decision to terminate Plaintiff's STD benefits and order Aetna to pay Plaintiff all accrued past STD benefits.  *See Martinez v. Beverly Hills Hotel and Bungalows Emp. Benefit Trust Employee Welfare Plan*, 538 Fed. App'x 778, 778 (9th Cir. 2013) ("The district court abused its discretion by remanding the matter to the Plan administrator after correctly ruling that the Plan's reasons for denying benefits were invalid.  No factual determinations remained to be made; the administrator simply erred in denying [plaintiff] benefits.  The proper remedy under the circumstances was to order the payment of benefits then and there.") (citing *Canseco v. Construction Laborers Pension Trust for S. Cal.*, 93 F.3d 600, 609 (9th Cir. 1996)).

6.     Aetna's decision denying LTD benefits on the ground that Plaintiff did not meet the 26-week waiting period is no longer valid given that Plaintiff has been found disabled throughout the maximum duration of the STD benefits period.

7.     Because Aetna relied on Plaintiff's failure to satisfy the 26-week waiting period in denying her LTD benefits, Aetna did not determine whether Plaintiff's medical evidence could support a finding of long-term disability.

8.     The proper remedy is to remand the case to Aetna for reevaluation of whether Plaintiff qualifies for LTD benefits based on the medical evidence

previously submitted.  *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996) ("[R]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 951 (9th Cir. 1993) (ordering district court to remand case to plan administrator to make further factual findings). Upon remand, Aetna shall support its decision regarding Plaintiff's eligibility for LTD benefits with detailed findings regarding her physical condition.

9.     Such findings should be supported by appropriate medical evidence including, for example, a physical examination of Plaintiff, a more recent MRI, and any other clinical tests Aetna deems appropriate.  *See Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009) ("Other factors that frequently arise in the ERISA context include the quality and quantity of the medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records.").  *See also Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005) ("We find that the failure to conduct a physical examination . . . may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.").

## IV.   CONCLUSION

Aetna's decision terminating Plaintiff's STD benefits is reversed.  Aetna is ordered to pay Plaintiff STD benefits for the period August 3, 2012 through December 2, 2012, forthwith.  Aetna's decision denying Plaintiff's claim for LTD benefits is vacated.  The determination of LTD benefits is remanded to Aetna so

1   that it can re-review Plaintiff's medical evidence and determine, in good faith,

2   whether she qualifies for LTD benefits.

3

4

5                                        **SO ORDERED:**

6   Dated:  April 24, 2014

7                                        JOSEPHINE L. STATON

8                                        Honorable Josephine L. Staton
                                         United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                      22
27

28